IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-344-D

| | |
|---|---|
| CORINNE HELEN MITCHELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Corrine Helen Mitchell ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-29] be granted, Defendant's Motion for Judgment on the Pleadings [DE-31] be denied, and the matter be remanded to the Commissioner for further consideration.

**STATEMENT OF THE CASE**

Plaintiff protectively filed an application for a period of disability and DIB on January 8, 2013 (Tr. 76, 91), alleging disability beginning July 24, 2012 (Tr. 200). The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 76, 91.) On

March 19, 2015, a hearing was held before Administrative Law Judge Catherine Harper ("ALJ"), who issued an unfavorable ruling on March 25, 2015. (Tr. 24-25, 37.) On May 11, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. § 404.1520a(e)(3).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since July 24, 2012, and that she meets the insured

3

status requirements through December 31, 2015. (Tr. 12.) Next, the ALJ determined Plaintiff had the following severe impairment: "L5 burst fracture-status post fusion L4-S1 in September 2012." (*Id.*) The ALJ also found that Plaintiff had the following non-severe impairments: hypothyroidism, GERD, insomnia, osteoporosis, fractures to her bilateral ankles in July 2012, alcohol dependence in remission, neuropathy, bipolar disorder, depression, and post-traumatic stress disorder. (Tr. 12-16.) However, at step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the ability to perform light work with the following limitations:

> The claimant can occasionally climb ladders, ropes, and scaffolds. She can frequently balance, climb ramps or stairs, stoop, crouch, kneel and crawl. The claimant should avoid concentrated exposure to unprotected heights.

(Tr. 16.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 17.) At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of her past relevant work as "user support analyst supervisor, chief systems programmer, data base administrator, and technical support specialist." (Tr. 22-24.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on three grounds. Plaintiff first contends that the ALJ erred in failing to find that her bipolar disorder and depression were severe impairments. Second, Plaintiff asserts that the ALJ erred in determining Plaintiff's RFC. Third, Plaintiff contends the ALJ erred in failing to give a treating physician controlling weight.

4

## A. Severity of Impairments

Plaintiff first contends that the ALJ committed reversible error at step two of the sequential evaluation process by failing to classify Plaintiff's bipolar disorder and depression as "severe" impairments. Plaintiff challenges the ALJ's finding, arguing that the record does not support the finding that Plaintiff's bipolar disorder and depression had such a minimal effect that it would not interfere with her ability to do basic work activities. A "severe" impairment within the meaning of the regulations is one that "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities."[1] 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely, an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." SSR 85-28, 1985 WL 56856, at *3 (Nov. 15, 1985); *see also Evans v. Heckler,* 734 F.2d 1012, 1014 (4th Cir.1984). The claimant has the burden of demonstrating the severity of her impairments. *Pass*, 65 F.3d at 1203.

At step two of the sequential evaluation process, an ALJ must determine whether a claimant's impairment(s), individually or in combination, are "severe." 20 C.F.R. §§ 404.1523, 416.923. So long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process. *Id.*; *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining that the existence of one or more severe

---

[1] Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986) (citing 20 C.F.R. § 416.921(b)). For example, work activities might include walking, standing, sitting, lifting, pushing, pulling, and reaching; the capacity to see, hear and speak; and understanding, carrying out, and remembering simple instructions. *Id.*

5

impairments requires the ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

Thus, courts have found that an ALJ's failure to find a particular impairment severe at step two does not constitute reversible error where the ALJ determines that a claimant has other severe impairments and proceeds to evaluate all the impairments at the succeeding steps in the evaluation. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (noting that, although the Fourth Circuit has not addressed the question, it agrees with the conclusions of these other courts); *Hill v. Astrue,* 289 Fed. Appx. 289, 292 (10th Cir.2008); *Pittman v. Astrue*, No. 5:08-CV-83-FL, 2008 WL 4594574, *4 (E.D.N.C. Oct. 10, 2008) (finding that ALJ's failure to set forth specific facts at step two regarding severity of claimant's knee impairment was not reversible error because ALJ considered all of claimant's impairments in formulating RFC); *see also Maziarz v. Sec'y of Health & Human Servs,* 837 F.2d 240, 244 (6th Cir.1987). In *Maziarz*, the Sixth Circuit stated:

> Maziarz argues that the Secretary erred in failing to find that his cervical condition constitutes a severe impairment. We find it unnecessary to decide this question. According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined above. In the instant case, the Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.

*Id.*; *see also Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) ("easily dispos[ing]" of claimant's argument that remand was appropriate where the ALJ failed to determine that some of her impairments were "severe" because the ALJ had determined that others were "severe").

6

In this case, the ALJ found in Plaintiff's favor at step two and proceeded to the remaining steps of the sequential evaluation process. (Tr. 12-25.) Therefore, any error that occurred at step two is harmless.

### B. Residual Functional Capacity

Next, Plaintiff alleges that the ALJ erred in her RFC determination by failing to address mental limitations caused by Plaintiff's bipolar disorder and depression. The undersigned agrees.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3). Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

The record in this case indicates that Plaintiff has been diagnosed with bipolar affective disorder and depression. The ALJ addressed Plaintiff's medical records pertaining to her mental impairments and appeared to rely heavily on notes from Plaintiff's primary care provider in which it is reported that Plaintiff's mental status was noted to be within normal limits. (Tr. 539, 535, 711.) However, it appears Plaintiff was not receiving treatment for her mental conditions from her primary care physician, and her primary care physician notes that Plaintiff's medications are managed by her psychiatrist. (Tr. 672, 700.) The ALJ also opines that Plaintiff's mood was

7

assessed and self-reported as stable. However, throughout the record, Plaintiff describes herself as "depressed" and "the same" and at times that her depressive symptoms were worsening. (Tr. 726, 731, 742, 748, 760, 765, 770, 785, 788, 793.) Moreover, Plaintiff's psychiatrists repeatedly described her mood upon mental status examinations, as "terrible" (Tr. 727), "depressed" (Tr. 733, 761, 767, 778, 781, ), "okay" (Tr. 739, 772), and "the same" (Tr. 743, 757, 790, 794). Plaintiff's treating psychiatrist Dr. Leslie B. Hocking stated several times that Plaintiff's mood was stable with no indication of deterioration. (Tr. 780, 783, 787, 792.) However, there is no indication in the record that Plaintiff's depressive symptoms improved with medication. In fact, Dr. Hocking noted in her medical source statement that "medication treatment to date has not led to resolution of [Plaintiff's] symptoms of depression." (Tr. 797.)

Stability of a particular ailment is not indicative of its seriousness or disabling characteristics. *Davisson v. Astrue*, No. 1:10-CV-2411, 2011 WL 2461883 (N.D. Ohio Jun. 17, 2011) ("A person can have a condition that is both 'stable' and disabling at the same time."). Regarding Plaintiff's situation and the lack of evidence that Plaintiff's depression improved, "a notion that a condition is 'stable' is reasonably interpreted as meaning that the condition is not changing, not that the condition is improving as suggested by the ALJ." *Ward v. Colvin*, 90 F. Supp. 3d 510, 513 (E.D.N.C. Feb. 5, 2015).

Next, the ALJ opines that Plaintiff had "normal mental status examination findings" on November 21, 2014, and December 19, 2014. (Tr. 19.) The evidence of record does not support such a finding. On November 21, 2014, Plaintiff's mood was assessed as "the same," her insight and judgment were assessed as "fair," and she was assessed a GAF score of 50. (Tr. 788-89.) Dr. Hocking also noted that Plaintiff was "at chronic elevated risk for self-harm/suicide." (Tr. 787.) On December 19, 2014, Plaintiff's mood was "the same," she presented an affect of

8

decreased range, she was tearful during the appointment, her insight and judgment were assessed as "fair," and she was again assessed a GAF score of 50 and an elevated chronic risk of self-harm and suicide. (Tr. 792-95.) The ALJ does not provide an explanation as to how she reconciled this contradictory evidence.

    Furthermore, the ALJ refused to directly address Plaintiff's GAF score, stating:

> [T]he Commissioner has specifically declined to endorse the GAF scale for use in disability programs and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorder listings." It must be remembered that a GAF score is a one day, one time only snapshot in time. Disability, to be compensable under this program, must have lasted or be expected to last for one continuous year or more. Moreover, many factors that are not even impairments go into the makeup of a GAF score, such as unemployment, loss of a job, or financial difficulty. *GAF scores are largely subjective and in this case, are not consistent with the longitudinal treatment records which find the claimant's mental health symptoms to be well managed on medication.*

(Tr. 22 (citation omitted) (quoting 65 Fed. Reg. 50, 764-65 (Aug. 21, 2000)).) Plaintiff was assessed with approximately twenty-five GAF scores ranging from 35 to 50,[2] all of which post-date her alleged onset date of July 24, 2012. The only score the ALJ mentions is a score of 25, which Plaintiff received on or about June 6, 2012, "on admission to the hospital for recovery program [sic] for dependence to alcohol." (Tr. 22, 321.)

---

[2] At the time of the ALJ's decision, the GAF scale was endorsed by the American Psychiatric Association for use by mental health professionals in rating an individual's level of social, occupational and psychological functioning. A GAF score in the range of 41 to 50 was considered to reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM"), 32 (4th ed. Text rev. 2000). The Fifth Edition of the DSM, published in 2013, has modified the multiaxial assessment system previously espoused by the DSM–IV, discontinuing use of the GAF. Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 16 (5th ed. 2013).

Although not determinative of disability, GAF scores are an assessment of an individual's social, occupational and psychological capacities and should be considered by the ALJ. *See Rios v. Comm'r of Soc. Sec.*, 444 Fed. App'x 532, 535 (3d Cir. 2011) (concluding that GAF scores are medical evidence that informs the ALJ's judgment); *Martin v. Colvin*, No. 7:13-CV-273-FL, 2015 WL 1346990, at *5 (E.D.N.C. Mar. 24, 2015). Here, Plaintiff's numerous GAF scores were not considered in determining whether Plaintiff required mental limitations in her RFC.

Because of the lack of discussion regarding evidence inconsistent with the ALJ's RFC determination, as well as the lack of explanation regarding Plaintiff's GAF scores, the undersigned is unable to determine whether the ALJ's RFC determination is supported by substantial evidence. Therefore, the case should be remanded to the Commissioner for further proceedings.

### C. Treating Physician's Opinion

Lastly, Plaintiff contends that the ALJ erred in giving Dr. Hocking's opinions regarding the severity of Plaintiff's mental impairments "very little weight." (Tr. 21.) An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). An ALJ must further "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7 (Jul. 2, 1996). As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R §§ 404.1527(b) & (c), 416.927(b) & (c); *see also Monroe v. Colvin*, No. 7:13-CV-74-FL, 2014 WL 7404136, at *16 (E.D.N.C. Dec. 30, 2014). Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant]

can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Controlling weight will be given to "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Craig,* 76 F.3d at 590.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given the treating physician's opinion by applying the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the field in which the opinion is rendered.  20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)-(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

Here, Dr. Hocking provided a medical source statement on February 24, 2015.  She opined that Plaintiff's ability to understand and remember simple instructions, to carry out simple instructions, and to make judgments on simple work-related decisions were all moderately impaired.  (Tr. 796.)  Dr. Hocking additionally noted that Plaintiff had a marked impairment in understanding, remembering, and carrying out complex instructions.  (Tr. 796.)  Dr. Hocking determined that Plaintiff's "ability to make judgments on complex work-related decisions" was extremely impaired.  (Tr. 796.)  Dr. Hocking then stated, "[Plaintiff] has a history of depression which is complicated by/exacerbated by her chronic pain syndrome.  She has limitations due to

depression in her capacity to function cognitively [*e.g.*,] she has problems with memory, judgment and the ability to write, spell and read." (Tr. 796.)

Dr. Hocking further opined that Plaintiff had no limitations when interacting with the public, but marked limitations with her ability to interact with supervisors and co-workers, and extreme limitations in her ability to "[r]espond appropriately to usual work situations and to changes in a routine work setting." (Tr. 797.) Dr. Hocking explained, "Because of her depression [Plaintiff] would have difficulty coping [with] the structure, expectations and demands of a work setting. When depressed she is withdrawn and irritable in interacting with other people." (Tr. 797.) Dr. Hocking further stated that "[Plaintiff's] physical stamina, motivation and energy level are all affected by her chronic depression. Medication treatment to date has not led to resolution of her symptoms of depression. She is unable to work so as to sustain a living wage." (Tr. 797.)

The ALJ gave no weight to Dr. Hocking's opinion that Plaintiff was unable to work because "the issue of disability is one reserved for the Commission." (Tr. 21.) The ALJ then stated, "Very little weight has been given to Dr. Hocking's opinions concerning the severity of the claimant's mental impairments on this medical source statement, as these are not supported by the longitudinal treatment records, including medical records from visits with Dr. Hocking herself." (Tr. 21.) The ALJ then goes on to address specific appointments, which purportedly support her determination:

> Dr. Hocking found in September 2014 that the claimant had a clean and neat appearance, intact short-term and long term memory, was able to "fully" concentrate and attend to tasks during an appointment in September 2014. In October 2014, Dr. Hocking assessed the claimant had a decreased range of affect, but intact short and long-term memory, and she was able to fully concentrate and attend to tasks. She noted that the claimant's sleep and appetite were stable. In November 2014, the claimant was assessed as having a completely normal mental status examination, including euthymic mood, logical and coherent thought

12

process, intact memory, and she was able to fully concentrate and attend. It was noted that the claimant appeared stable as regards to her mood, with no indication of deterioration. Therefore, it was determined the claimant would continue on current psychological medications. Also, in the review of systems, the claimant reported her appetite and sleep were stable. In December 2014, treatment notes found the claimant showed no indication of significant deterioration in mood. Although the mental status examination showed a decreased range of affect, the examination was otherwise normal. It was determined that claimant would continue on her current medication.

(Tr. 21.)

While the ALJ addresses specific appointments that appear normal in nature, the ALJ does not explain the contradicting information found during the same appointments. At all of the appointments, Plaintiff was found to have a GAF score of 50, her insight and judgment were assessed as fair, and she was determined to be "at chronic elevated risk for self-harm/suicide." (Tr. 779, 781-82, 784, 786-88, 790, 792, 795.) Additionally during the September 2014 appointment, Dr. Hocking noted that Plaintiff's mood was depressed and her affect was blunted. (Tr. 781.) During the October 2014 appointment, Dr. Hocking assessed Plaintiff with a decreased range of affect. (Tr. 786.) At the December 2014 appointment, Dr. Hocking specifically noted that although Plaintiff had some improvement with family stressors, Plaintiff "denie[d] however that this has led to any change in her mood ([*e.g.*,] less depressed) or pain level." (Tr. 793.)

Furthermore, the ALJ's determination is completely devoid of any discussion of the evidence provided by Plaintiff's treating therapist, Ms. Susan Wallace, which supports Dr. Hocking's assessment of Plaintiff's mental limitations. Ms. Wallace consistently found that Plaintiff had a GAF score of 35, that she had worsening depressive symptoms, and had a flat affect. (Tr. 745, 747, 751-55, 762-63, 768, 773-74, 782-83, 791.)

Due to the ALJ's failure to reconcile evidence contradictory to her findings, the court is unable to determine whether substantial evidence supports the ALJ's determination that Dr.

13

Hocking's opinions concerning the severity of the claimant's mental impairment are entitled to "very little weight." Therefore, the case should be remanded to the Commissioner for further proceedings on this issue.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-29] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-31] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **July 15, 2016**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding

district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 28th day of June 2016.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge